UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARNELL ELLSWORTH HAYES,

          Petitioner,

v.                                       Civil Case No. 15-10081
                                       Honorable Linda V. Parker

SHERRY BURT,

          Respondent.

_____/

## OPINION AND ORDER DENYING THE MOTION FOR DISCOVERY (ECF NO. 9), DENYING THE HABEAS CORPUS PETITION (ECF NO. 1), GRANTING IN PART A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

## I.    INTRODUCTION

This matter is before the Court on Petitioner Darnell Ellsworth Hayes' pro se

motion for discovery and petition for the writ of habeas corpus under 28 U.S.C.

§ 2254. Petitioner is challenging his convictions under Michigan law for first-

degree (felony) murder, assault with intent to commit murder, conspiracy to

commit armed robbery, felon in possession of a firearm, and possession of a

firearm during the commission, or attempt to commit, a felony. As grounds for

relief, Petitioner alleges that: (1) the exclusion of the public for a key portion of

his trial violated his constitutional right to a public trial; (2) defense counsel was

ineffective for failing to object to the closure of the courtroom; (3) the trial court

deprived him of a fair trial by permitting testimony that a key witness was reluctant

to testify due to intimidation by a gang and unspecified threats; (4) the admission of testimony regarding his "mug shot" and arrest for an unrelated charge of disorderly conduct violated his right to a fair trial; (5) the felony information failed to comport with the notice requirements for felony murder; (6) prosecutorial misconduct deprived him of due process; and (7) trial counsel's failure to make objections, request a cautionary jury instruction, and move for a mistrial deprived him of effective assistance.

In an answer to the petition filed through counsel, Respondent argues that Petitioner is not entitled to discovery, he procedurally defaulted four of his seven habeas claims, and the state courts' rejection of Petitioner's claims did not result in decisions that were contrary to federal law, unreasonable applications of federal law, or unreasonable determinations of the facts. The Court agrees that Petitioner is not entitled to discovery and that habeas relief is not warranted on any of Petitioner's claims. Accordingly, the Court is denying Petitioner habeas corpus relief and his motion for discovery.

## II.    BACKGROUND

Petitioner was charged in the Circuit Court for Wayne County, Michigan, with felony murder, premeditated murder, assault with intent to commit murder, conspiracy to commit armed robbery, felon in possession, and felony firearm. The

charges arose from the shooting of Philden Reid ("Reid") and Brian Tilles[1]

("Tilles") in Detroit, Michigan, on May 8, 2009. Reid died from his gunshot

wounds, but Tilles survived and was the main witness at Petitioner's trial.

Petitioner and his two co-defendants (Derrico Searcy and Delmerey Morris) were

tried before a single jury in Wayne County Circuit Court where

> [t]he prosecution's theory . . . was that Reid was shot
> during the defendants' planned attempt to rob him of his
> expensive designer sunglasses and money. The
> prosecution's principal witness, [Tilles], was with the
> defendants during the offense. According to [Tilles], the
> group of neighborhood friends, which also included Rob
> Stringer, was outside talking when Reid drove by
> wearing the sunglasses and flashing money. Upon
> observing Reid, defendant Hayes remarked, "There go a
> lick," identifying Reid as an easy robbery victim. About
> five minutes later, the five men got into defendant
> Searcy's Jeep and observed Reid's vehicle at a nearby
> intersection. Defendant Hayes stated, "There go the
> lick," and told defendant Morris, who was seated behind
> defendant Hayes, to give him a firearm that defendant
> Morris had in his pocket. While still seated in the Jeep,
> which was next to Reid's vehicle, defendant Hayes
> opened the passenger door and fired several shots toward
> Reid's vehicle, then stepped out of the Jeep and
> continued shooting. In the meantime, [Tilles] and
> Stringer fled from the backseat of the Jeep and, while
> running, [Tilles] was accidentally shot by defendant

---

[1] At Petitioner's preliminary examination, Tilles spelled his last name when asked.
(8/12/11 Tr. at 6, ECF No. 6-2 at Pg ID 183.) At subsequent proceedings, he was
not asked to spell his last name and it is spelled throughout the transcripts as
"Tillis." (*See* 10/13/11 Trial Tr. at 3, Pg ID 582.) The Court is using the spelling
he provided.

> Hayes.  Defendant Morris and Stringer carried [Tilles] to the Jeep, defendant Hayes reentered the vehicle, and defendant Searcy drove the men away from the scene. Reid received two gunshot wounds, one to the back and one to the thigh, and died at the scene.  The defense theory for all three defendants was that they were not involved in Reid's death or an attempted robbery, and that [Tilles] was not a credible witness.

*People v. Hayes*, No. 308527, 2014 WL 1267264, at *1 (Mich. Ct. App. Mar. 27, 2014).

On October 24, 2011, the jury found Petitioner guilty of felony murder, second-degree murder (as a lesser-included offense of premeditated murder), assault with intent to commit murder, conspiracy to commit armed robbery, felon in possession, and felony firearm.  The trial court sentenced Petitioner to two years in prison for the felony-firearm conviction, followed by concurrent terms of life imprisonment for the murder convictions, thirty to sixty years in prison for the assault and conspiracy convictions, and forty to sixty months in prison for the felon-in-possession conviction.

Petitioner raised his habeas claims in an appeal as of right.  The Michigan Court of Appeals vacated Petitioner's conviction and sentence for second-degree murder and remanded Petitioner's case to the trial court to correct a clerical error in his judgment of sentence.  The Court of Appeals affirmed Petitioner's convictions and sentence in all other respects.  *See id*. Petitioner appealed to the

Michigan Supreme Court, but the State Supreme Court denied leave to appeal

because it was not persuaded to review the issues. *See People v. Hayes*, 849

N.W.2d 380 (Mich. 2014). On January 8, 2015, Petitioner filed his pending federal

habeas corpus petition.

## III. PRELIMINARY MATTERS

### A. Procedural default

Respondent argues in her answer to the petition that Petitioner procedurally

defaulted his first, fourth, fifth, and sixth grounds for habeas relief by failing to

object to the claimed errors at trial. To obtain habeas relief on procedurally

defaulted claims, a petitioner must establish "cause" for the defaults and "also

show that the claims are meritorious." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th

Cir. 2010). Petitioner argued in a motion to amend, which the Court granted (*see*

ECF Nos. 7 and 8), that his trial attorney was "cause" for his failure to object at

trial. Petitioner also raises independent claims of ineffective assistance of counsel

in his habeas petition.

The Court finds it more efficient to address the merits of Petitioner's claims

than to analyze whether the claims are procedurally defaulted. Accordingly, the

Court excuses the alleged procedural defaults and "cut[s] to the merits here," as

"the cause-and-prejudice analysis adds nothing but complexity to the case." *Id.*

## B.  <u>Petitioner's motion for discovery</u>

In his motion for discovery, filed March 21, 2017, Petitioner alleges that "new developments" suggest Tilles fabricated his testimony and that detectives had specific information concerning this fabrication.  Petitioner claims the new developments show there was a miscarriage of justice in his case and that the prosecutor presented false evidence in violation of *Giglio v. United States*, 405 U.S. 150 (1972), and withheld favorable evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).  To prove his claims, Petitioner seeks a copy of the Detroit Police Department's homicide file and the Wayne County prosecutor's office file.  Respondent opposes any request by Petitioner for discovery.  (*See* Answer in Opp'n to Pet. for Writ of Habeas Corpus at 66-67, ECF No. 5 at Pg ID 158-59.)

"[H]abeas actions are civil cases."  *Rumsfeld v. Padilla*, 542 U.S. 426, 452 (2004) (Kennedy, J., concurring).  However, habeas petitioners, unlike the usual civil litigants in federal court, are not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Although Rule 6(a) of the Rules Governing § 2254 Proceedings provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedures," this rule "makes it clear that the scope and extent of such discovery is

a matter confided to the discretion of the District Court." *Bracy*, 520 U.S. at 909. Discovery is appropriate only when "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Id.* at 908-09 (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)). "'Conclusory allegations are not enough to warrant discovery under [Rule 6]; the petitioner must set forth specific allegations of fact.'" *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994)).

The primary issue at Petitioner's trial was whether Tilles was a credible witness. The parties addressed Tilles' credibility during voir dire, in their opening statements, during the prosecution's case in chief, when cross-examining Tilles, and in their closing arguments. To support their respective positions, the prosecution admitted evidence to show that Tilles' testimony was corroborated, and defense counsel cross-examined Tilles about inconsistencies in his testimony. Tilles' criminal history was made known to the jury, and defense counsel suggested that Tilles was a liar, a sheep in wolves' clothing, and perhaps the person who shot Reid. In short, "the issue of [Tilles'] credibility, including his motivation for testifying and the existence of other possible influences on his

testimony, was explored at length by all three defendants." *Hayes*, 2014 WL 1267264, at *8.

Furthermore, before trial, the prosecutor provided the defense attorneys 4,000 minutes of audiotaped conversations between Tilles and the officer in charge of the case while Tilles was in jail or in prison.   The purpose of reviewing the tapes was to determine whether Tilles was promised anything for his cooperation in the case and whether the prosecution was withholding evidence of promises made to Tilles.  (10/6/11 Hr'g Tr. at 5-11, ECF No. 6-4 at Pg ID 251-57.) Petitioner and his co-defendants also were given the name of Tilles' aunt who supposedly described Tilles as a liar.  (*Id*. at 11-12, Pg ID 256-57.)  It therefore appears that Petitioner had ample opportunity to conduct discovery before trial regarding the motivations behind and credibility of Tilles' testimony.

Although Petitioner now maintains that detectives knew Tilles was fabricating his testimony, Petitioner has not revealed the source of this information, except to say that family members continue to investigate his case.  Further, because Tilles' credibility was attacked thoroughly at trial, Petitioner fails to demonstrate that the facts, if more fully developed, would entitle him to relief.  He has not shown good cause for discovery.  The Court therefore is denying

Petitioner's motion for discovery (ECF No. 9) and is proceeding to address his habeas claims, using the following standard of review.

## IV.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Williams v. Taylor*, 529 U.S. 362, 411 (2000).

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court

rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

Furthermore, a state court's determination of a factual issue is presumed to be correct unless the petitioner rebuts the presumption of correctness with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Holland v. Rivard*, 800 F.3d 224, 242 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 1384 (2016). In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V. ANALYSIS

### A. <u>Whether Petitioner was denied the right to a public trial</u>

In his first ground for habeas relief, Petitioner alleges that the exclusion of the general public from his trial while Tilles testified violated Petitioner's constitutional right to a public trial. The prosecutor moved to close the courtroom during Tilles' testimony because one or more people had threatened Tilles while he was incarcerated. Petitioner contends that the request was inappropriate because the prosecutor failed to show that he (Petitioner) or any of the spectators had threatened Tilles.

Petitioner blames the trial court for failing to (1) inquire into the potential intimidation and threats, (2) apply the four-part test set forth in *Waller v. Georgia*, 467 U.S. 39 (1984), (3) consider any alternatives to closing the courtroom, and (4) make any factual findings. The Michigan Court of Appeals reviewed Petitioner's claim for "plain error affecting [Petitioner's] substantial rights" because Petitioner did not preserve his claim for appellate review by objecting to the partial closure during trial. Counsel for one of his co-defendants objected, however.

The Michigan Court of Appeals concluded that there was no merit to Petitioner's claim, finding first that the trial judge only partially closed the trial because the defendants' parents were allowed to remain in the courtroom during

Tilles' testimony.  *Hayes*, 2014 WL 1267264, at *6.  The appellate court then

reasoned:

> The record establishes a substantial reason for the partial
> courtroom closure, namely the avoidance of witness
> intimidation, and that the closure did not unnecessarily
> interfere with defendant Hayes's right to a public trial.
> The nature of the offenses involved a group of friends
> who participated in a murder during an attempted
> robbery.  [Tilles] was with the defendants at the time of
> the crimes and decided to testify against them after they
> were no longer on good terms.  Before [Tilles] testified,
> the prosecutor asked the trial court to exclude the public
> from the courtroom.  The prosecutor explained that
> [Tilles], the prosecution's chief witness, had been
> threatened after he started testifying in these cases, and
> that he had to be moved from several different prisons
> because of the threats.  The prosecutor argued that this
> history demonstrated a likelihood that [Tilles] could be
> inhibited when testifying in open court if the defendants'
> parents, family, and friends were present in the
> courtroom.

*Id*.  For the reasons that follow, the state court's decision was neither contrary nor

an unreasonable application of clearly established federal law, and it was not based

on an unreasonable determination of the facts in light of the evidence presented.

### 1.    Applicable Law

The Sixth Amendment to the United States Constitution guarantees that a

criminal defendant, "shall enjoy the right to a . . . public trial."  U.S. Const. amend.

VI.   This right is made applicable to the States through the Fourteenth

12

Amendment. *Presley v. Georgia*, 558 U.S. 209, 212 (2010) (citing *In re Oliver*, 333 U.S. 257 (1948)). "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions." *In re Oliver*, 333 U.S. at 270 n.25 (quotation marks and citation omitted). "In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Waller*, 467 U.S. at 46.

In *Waller*, the Supreme Court held that the complete closure of the courtroom to members of the public during a pretrial hearing violated the defendant's Sixth Amendment right to a public proceeding. The *Waller* Court identified four factors a court must consider, and findings a court must make, before excluding members of the public from the courtroom: (i)"the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced." (ii) "the closure must be no broader than necessary to protect that interest," (iii) "the trial court must consider reasonable alternatives to closing the proceeding," and (iv) "it must make findings adequate to support the closure." *Id*. at 48.

Subsequently in *Presley*, the Supreme Court reaffirmed that a trial court must make the required findings under *Waller* before excluding members of the public from the jury selection proceeding in a criminal trial. The Court held that the trial court violated the defendant's Sixth Amendment right to a public proceeding when it failed to consider alternatives to the removal of the single member of the public in attendance before bringing the jury venire into the courtroom. *Id.* at 214-15.

*Waller* and *Presley* concerned a full, rather than partial, closure of the courtroom to the public. In *Waller*, "the court ordered [a] suppression hearing closed to all persons other than witnesses, court personnel, the parties, and the lawyers." 467 U.S. at 42. In *Presley*, the trial court told a lone courtroom observer during jury selection that he was not allowed in the courtroom during the proceedings. 558 U.S. at 210. The Sixth Circuit has held that Supreme Court caselaw therefore does not clearly establish whether and how *Waller*'s requirements apply when the proceedings are only partially closed. *Drummond v. Houk*, 797 F.3d 400, 403 (6th Cir. 2015). The court explained:

> What was not obvious at the time of the Ohio Supreme Court's decision, however—and thus not clearly established for purposes of the habeas statute—is whether and how these more specific rules apply in cases, like this one, where some spectators but not all are removed from the courtroom. The Supreme Court's

caselaw does not clearly establish, for example, whether in such cases the trial court must identify an "overriding" interest favoring closure, as in *Waller*, or instead only a "substantial" interest, as some circuit courts have inferred, or perhaps even some lesser interest. Likewise unclear—and thus not clearly established—is whether the closure must be "narrowly tailored … as the Court required in *Waller*, or whether in partial-closure cases a somewhat looser cut will do. And on the procedural side, *Waller* says the court must make "findings adequate to support the closure." … But "adequate" is a vague and therefore elastic term; and for all the Ohio courts knew here, "adequate" might mean one thing in full-closure cases, and a different and less rigorous thing when the closure is only partial.

*Id.*[2] As the Sixth Circuit noted in another decision, "[n]early all federal courts of appeals … have distinguished between the total closure of proceedings and situations in which a courtroom is only partially closed to certain spectators." *United States v. Simmons*, 797 F.3d 409, 413 (6th Cir. 2015).

The *Drummond* court found that "'there are reasonable arguments,' … that *Waller* does not apply to partial-closure cases in the wholesale manner that [the habeas petitioner] says it does." 797 F.3d at 404 (quoting *White v. Woodall*, 134 S.

---

[2] As the *Drummond* court provided, a full closure "mean[s] a closure where the entire public, including the media, is excluded from the courtroom." 467 U.S. at 402. "'Whether a closure is total or partial depends not on how long a trial is closed, but rather who is excluded during the period of time in question.'" *United States v. Simmons*, 797 F.3d 409, 413 (6th Cir. 2015) (quoting *United States v. Thompson*, 713 F.3d 388, 395 (8th Cir. 2013)) (ellipsis removed).

Ct. 1697, 1704 (2014)).  According to the court, "[t]he only principle from *Waller* that was clearly established for purposes of the partial closure here was the general one that the trial court must balance the interests favoring closure against those opposing it."  *Id*.  Finding that the state court "applied that principle" and "did so reasonably, in the capacious sense of 'reasonable' as used for purposes of the habeas statute[,]" the Sixth Circuit concluded that the petitioner was not entitled to habeas relief on his public trial claim.  *Id*.

### 2.    Application

The Michigan Court of Appeals characterized the closure in Petitioner's case as a partial one.  *Hayes*, 2014 WL 1267264, at 6.  The trial record substantiates this determination.  (*See* 10/13/11 Trial Tr. at 9-14.)  The trial judge allowed the defendants' parents to remain in the courtroom during Tilles' testimony, despite asking everyone else to leave.  (*Id*. at 14.)  Because the closure was partial, Petitioner's public trial claim cannot be based on clearly established Supreme Court law.  *Drummond*, 797 F.3d at 403.

To the extent *Waller*'s general rule applies regardless of the form of closure—that "a trial court must balance the interests for and against closure, 467 U.S. at 45—this Court finds that the Michigan courts followed that rule.  As the Michigan Court of Appeals recited, the trial court balanced the defendants' right to

16

a public trial against the need to avoid witness intimidation and to protect the integrity of the judicial system. *Hayes*, 2014 WL 1267264. The prosecutor represented to the trial judge that the Michigan Department of Corrections repeatedly moved Tilles due to threats made against him while he was incarcerated. (10/13/11 Trial Tr. at 9, ECF No. 6-7 at Pg ID 588; 10/6/11 Hr'g Tr. at 9, ECF No. 6-4 at Pg ID 255.) The prosecutor also informed the trial judge that after Tilles came forward in the case, his brother was murdered in a way to suggest that it was designed to send a message to Tilles to shut his mouth. (10/6/11 Hr'g Tr. at 9, ECF No. 6-4 at Pg ID 255.)

For the above reasons, the Court concludes that Petitioner is not entitled to habeas relief based on his public trial claim.

> **B.** **Whether Petitioner was denied the effective assistance of counsel based on counsel's failure to object to the closure of the courtroom**

In a related claim, Petitioner asserts that his trial attorney was ineffective for failing to object to the closure of the courtroom and for failing to mention the Supreme Court's decision in *Waller*. Petitioner argues that his counsel should have asked the trial court to make a factual record establishing some connection between the alleged intimidation and the people in the audience. The Michigan Court of Appeals determined that defense counsel's failure to challenge the partial

closure was not objectively unreasonable and that Petitioner failed to establish ineffective assistance of counsel.

### 1. Clearly Established Federal Law

The "clearly established Federal law" for claims of ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). *Pinholster*, 563 U.S. at 189. Under *Strickland*, a defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The "deficient performance" prong of the *Strickland* test requires the defendant to show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

The "prejudice" prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* A defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

at 694.  Although prejudice is presumed when a defendant's public trial rights are violated, it is not presumed in an ineffective assistance of counsel claim related to the violation:

> [W]hen a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically.  Instead, the burden is on the defendant to show either a reasonable probability of a different outcome in his or her case or … to show that the particular public-trial violation was so serious as to render his or her trial fundamentally unfair.

*Weaver v. Massachusetts*, __ U.S. __, 137 S. Ct. 1899, 1911 (2017).

In the habeas context, review of an ineffective-assistance-of-counsel claim "is doubly deferential[.]"  *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011).  A federal habeas court must afford "both the state court and the defense attorney the benefit of the doubt."  *Burt v. Titlow*, __ U.S. __, 134 S. Ct. 10, 13 (2013).  The question becomes "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Harrington*, 562 U.S. at 105.

### 2.  Application

The Court begins its analysis by noting that counsel for one of the defendants did object to the closure of the proceedings during Tilles' testimony, and the trial court overruled the objection. Thus, there is not a reasonable

probability that the outcome of Petitioner's trial would have been different if counsel for Petitioner had objected or joined in the other attorney's objection to the prosecutor's request to close the courtroom. Moreover, as discussed above, because the trial judge only partially closed the proceedings, there was no basis for Petitioner's counsel to argue that the court had to adhere to *Waller*'s requirements. For the same reason, the trial judge was not required to make a factual record establishing a connection between the threats against Tilles and the individuals in the audience who were removed from the courtroom.

Furthermore, Petitioner has not shown a reasonable probability that the result of the trial would have been different if his attorney had successfully objected to the partial closure of the courtroom and the trial court had allowed everyone present in the courtroom—not only the defendants' parents—to remain during Tilles' testimony. Nor has Petitioner shown that his trial was rendered fundamentally unfair by the partial closure.

The Court therefore holds that Petitioner is not entitled to habeas relief based on this ineffective assistance of counsel claim.

**C.** **Whether the introduction of evidence that Tilles was reluctant to testify due to threats violated Petitioner's right to a fair trial**

In his third ground for relief, Petitioner claims he was deprived of a fair trial when the trial judge permitted Tilles to testify that he was the victim of gang

intimidation and was threatened after he became a witness for the prosecution.[3]

Petitioner states that this testimony was "outcome-determinative" because Tilles

was the sole witness to inculpate him. (Br. in Supp. of Pet. at 25, ECF No. 1 at Pg

ID 31.)

The Michigan Court of Appeals rejected Petitioner's claim related to

testimony about gang intimidation because it found no evidence in the record

relating to a gang. *Hayes*, 2014 WL 1267264, at *7. On appeal, Petitioner did not

identify any portion of the record where evidence of his gang membership or

evidence that a gang was the source of any intimidation aimed at Tilles was

presented to the jury. *Id*. As the Michigan Court of Appeals explained, "although

defendant Hayes was alleged to be a member of the Hustle Boys gang, there was

no evidence that the charged offense was gang related and, accordingly, the trial

court prohibited any references to gang membership at trial." *Id*. As for the

unspecified threats against Tilles, the court of appeals concluded that the evidence

was erroneously admitted, but that the error was harmless.

---

[3] Petitioner refers to "gang intimidation" in the title of this claim; however, he does
not discuss evidence of gang intimidation in his argument in support of this claim.
As discussed *infra*, the Michigan Court of Appeals found no evidence in the record
related to a gang. *Hayes*, 2014 WL 1267264, at *7. Petitioner does not argue here
that this finding was incorrect.

### 1. Clearly Established Federal Law

Errors in the application of state law, especially rulings on the admission or exclusion of evidence, usually are not questioned in a habeas corpus proceeding, *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988), because "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). A state trial court's evidentiary error does not rise to the level of a federal constitutional claim warranting habeas corpus relief "unless the error render[ed] the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (citing *McGuire*, 502 U.S. at 69-70).

### 2. Application

In the jury's absence, the prosecutor sought prior permission from the trial court to elicit testimony that Tilles was transferred from prison to prison due to threats and that he remained a willing witness despite the threats. (10/13/11 Trial Tr. at 140-45, ECF No. 6-7 at Pg ID 720-25.) The prosecutor maintained that the jury needed to understand Tilles was receiving threats because he was "snitching."

(*Id.*)  The prosecutor also claimed that the evidence was relevant to Tilles'
credibility.  (*Id.*)  Petitioner's attorney objected to the proposed testimony on the
basis that the threats were not attributed to the defendants.  (*Id.*) The trial court
nevertheless ruled that the prosecutor could elicit the testimony.  (*Id.*)

The prosecutor subsequently asked Tilles whether he had been moved while
he was incarcerated.  (*Id*. at 149, Pg ID 728.)  Tilles answered that he had been
transferred to different prisons four or five times due to threats related to his
testifying.  (*Id*. at 149, 151, Pg ID 728, 730.)  Tilles stated that, at one point, he
was housed with one of Petitioner's relatives and had to be moved from the prison.
(*Id*. at 152, Pg ID 731.)  Tilles testified that he was still concerned for his safety.
(*Id.*)

The Michigan Court of Appeals correctly observed on review of Petitioner's
claim that there was no evidence introduced to the jury about a gang or that the
threats against Tilles were gang related.  Therefore, the only question is whether
Tilles' testimony about unspecified threats against him deprived Petitioner of due
process and a fair trial.  The Michigan Court of Appeals determined that the trial
court should not have allowed Tilles' testimony about unspecified threats because
it did not serve any of the purposes for which such testimony is allowed under

Michigan law. *Hayes*, 2014 WL 1267264, at *7. Nevertheless, the court found the error harmless. *Id*. at *8.

On habeas review, an issue is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)). A habeas court must assess the impact of trial error under *Brecht*'s standard regardless of whether "the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman [v. California*, 386 U.S. 18 (1967)]." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). "When a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).

Here, Tilles testified that he had been threatened in prison due to his testimony against the defendants, but he did not say that Petitioner or Petitioner's co-defendants threatened him. Although Tilles did say that he was moved to a different prison after he was housed with one of Petitioner's relatives (10/13/11 Trial Tr. at 152), once again, he did not say that Petitioner was behind the threats

24

or even that Petitioner's relative had threatened him. The implication may have

been that Petitioner's relative threatened Tilles, but there was no evidence that

Petitioner was involved. As such, this did not amount to evidence of Petitioner's

other bad acts, as he argues. Moreover, other evidence was introduced to show

that, before the threats were made, Tilles did not feel safe after he implicated the

defendants in the shooting. (*See id*. at 123, Pg ID 702; 10/17/11 Trial Tr. at 91,

ECF No. 6-8 at Pg ID 895.)

For these reasons, the Michigan Court of Appeals properly concluded that

the evidence was harmless. It is unlikely that Tilles' testimony about being

threatened had a substantial and injurious effect or influence on the jury's verdict.

**D.** **Whether Petitioner was denied a fair trial due to the admission of evidence concerning his mug shot and an unrelated charge**

In his fourth ground for relief, Petitioner claims that testimony about his

mug shot and an unrelated arrest for disorderly conduct deprived him of due

process and a fair trial. The charge of disorderly conduct was based on Petitioner

being intoxicated and sleeping outside on a bench in a recreation area in Westland,

Michigan. (10/18/11 Trial Tr. at 142-44, ECF No. 6-9 at Pg ID 1105-07.)

Petitioner contends that his arrest on the disorderly conduct charge and evidence of

the mug shot were irrelevant and inadmissible for the following reasons: (1) there

was no need to attempt to impeach him, as he did not testify; (2) the arrest was not

the equivalent of a conviction; and (3) the probative value of the evidence was substantially outweighed by the danger of unfair prejudice.

The Michigan Court of Appeals reviewed Petitioner's claim for "plain error" because he did not preserve the issue by objecting to the testimony at trial. *Hayes*, 2014 WL 1267264, at *9. The court then concluded that there was no plain error because the evidence was necessary to explain how the arresting officer discovered Petitioner's identity after Petitioner gave a false name and the fact that there was an outstanding homicide warrant for Petitioner related to the conduct for which he was on trial. *Id*. at *8-9. The court found Petitioner's use of a false name relevant to his consciousness of guilt. *Id*. at *9.

As previously explained, errors in the application of state law, especially rulings on the admission or exclusion of evidence, generally are not cognizable on habeas corpus review. *Cooper*, 837 F.2d at 286. A state trial court's evidentiary error rises to the level of a federal constitutional claim warranting habeas corpus relief only if the error rendered the proceeding so fundamentally unfair as to deprive the petitioner of due process. *McAdoo*, 365 F.3d at 494.

For the following reasons, it was not fundamentally unfair to elicit testimony about Petitioner's mug shot and arrest for disorderly conduct. First, the disputed evidence explained how Petitioner happened to be found, arrested, and identified

more than two years after the fatal shooting of Reid. (10/18/11 Trial Tr. at 140-46, ECF No. 6-9 at Pg ID 1102-08.) Evidence of other acts is admissible to provide background information and where the other acts are inextricably intertwined with the charged offense or the evidence is necessary to complete the story on the charged offense. *United States v. Hardy*, 228 F.3d 745, 748 (6th Cir. 2000). Here, the evidence was necessary to complete the story on the charged offenses.

Second, the reference to the mug shot was fleeting, and even though the primary inadmissible evidence conveyed by a mug shot is that the individual was previously arrested, *Matthews v. Abramajtys*, 319 F.3d 780, 789 (6th Cir. 2003), the arresting officer did not provide any details about Petitioner's criminal history.

Third, Petitioner's attorney stipulated, for purposes of the felon-in-possession charge, that Petitioner had a prior felony conviction. (10/20/11 Trial Tr. at 73; ECF No. 6-11 at Pg ID 1350.) The mug shot evidence was "basically inconsequential," given that evidence of a prior conviction was previously made known to the jurors in a proper manner. *Matthews*, 319 F.3d at 789.

Finally, there is not a substantial probability that testimony about the mug shot and arrest for disorderly conduct had a substantial and injurious effect on the jury's verdict. In the state appellate court's words, "there was no reasonable likelihood that the jury would use evidence of defendant Hayes's arrest for a

transitory disorderly conduct offense to conclude that he must be guilty of the dissimilar and much more serious charged offenses, including murder." *Hayes*, 2014 WL 1267264, at *9 (emphasis omitted).

The evidence was introduced for a proper reason, and any error in introducing the evidence was harmless. Therefore, Petitioner is not entitled to relief based on his claim about the mug shot and his arrest for disorderly conduct.

### E. Whether Petitioner was denied notice of the "intent to kill" element

In his fifth ground for relief, Petitioner claims he was denied his constitutional right to notice of the charges against him. Petitioner contends that he was not adequately informed of the "intent to kill" element of felony murder until the end of the trial when the trial court instructed the jury on the elements of the charge.[4] Petitioner points out that the "intent" element of the charge was not set forth in the criminal information (charging document) or in the statute.

The Michigan Court of Appeals reviewed this claim for "plain error" because Petitioner did not object to the information, nor raise the issue at trial.

---

[4] The jury instruction on felony-murder stated that the second element of the crime was the intent to kill, the intent to do great bodily harm, or the intent to create a high risk of death or great bodily harm, knowing that death or such harm would be the likely result. (10/21/11 Trial Tr. at 51; ECF No. 6-12 at Pg ID 1497.)

*Hayes*, 2014 WL 1267264, at *10.  The court concluded that the claim lacked

merit, finding that "[t]he information, coupled with the preliminary examination,

was constitutionally sufficient to place defendant Hayes on notice of the charges

against him."  *Id*.  The court pointed out that Hayes also was charged with first-

degree premeditated murder, for which the information specifically alleged that he

acted "with the intent to kill[.]"  *Id*.  Further, the prosecutor argued at the

preliminary examination that the fact "Hayes shot a gun multiple times toward

Reid's vehicle established that he had the 'clear' intent to kill."  *Id*.

### 1.  Clearly Established Federal Law

The Sixth Amendment to the United States Constitution provides that, "[i]n

all criminal prosecutions, the accused shall enjoy the right . . . to be informed of

the nature and cause of the accusation."  U.S. Const., amend. VI.  The Sixth Circuit

has explained this right, as applied to the States through the Fourteenth

Amendment, as follows:

> The due process clause of the Fourteenth Amendment
> mandates that whatever charging method the state
> employs must give the criminal defendant fair notice of
> the charges against him to permit adequate preparation of
> his defense.  *In Re Ruffalo*, 390 U.S. 544, 88 S. Ct. 1222,
> 20 L.Ed.2d 117 (1968); *Blake v. Morford*, 563 F.2d 248
> (6th Cir. 1977); *Watson v. Jago*, 558 F.2d 330, 338 (6th
> Cir. 1977). This requires that the offense be described
> with some precision and certainty so as to apprise the
> accused of the crime with which he stands charged.  Such

> definiteness and certainty are required as will enable a
> presumptively innocent man to prepare for trial. *Combs
> v. Tennessee*, 530 F.2d [695, 698 (6th Cir. 1976)].

*Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984).

## 2. Application

Petitioner argues that, if he had received adequate notice of the "intent to

kill" element of felony murder, his trial strategy could have revolved around Tilles'

testimony that there was no intent to kill the victim, only an intent to rob. The

Michigan Court of Appeals noted on review of Petitioner's claim, however, that in

addition to felony-murder, Petitioner was charged with premeditated murder, and

the felony complaint specifically alleged that Petitioner did "'deliberately, *with the

intent to kill* … murder' Reid." *Hayes*, 2014 WL 1267264, at *10 (emphasis added

in *Hayes*); (*see also* Felony Complaint, ECF No. 1 at Pg ID 83.) Further, as the

Michigan Court of Appeals pointed out, one of the issues addressed at Petitioner's

preliminary examination was whether there was sufficient evidence that he

possessed the intent to kill. (8/12/11 Hr'g Tr. at 55-59; ECF No. 6-2 at Pg ID 232-

35.) Additionally, during voir dire*,* the trial court stated that Petitioner was

charged in count two with "deliberately and with intent to kill and with

premeditation kill and murder Ms. [sic] Reid." (10/11/11 Trial Tr. at 19; ECF No.

6-5 at Pg ID 283.) Furthermore, "'it may be appropriate to presume that in most

cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of [the offense charged]." *Marshall v. Lonberger*, 459 U.S. 422, 436 (1983) (quoting *Henderson v. Morgan*, 426 U.S. 637, 647 (1976)).

For these reasons, the Court finds that Petitioner was adequately advised of the "intent to kill" element and had an adequate opportunity to defend against the charges. Therefore, habeas relief is not warranted on this claim.

### F. <u>Whether the prosecutor engaged in misconduct</u>

Petitioner argues in his sixth ground for relief that the prosecutor engaged in misconduct by failing to provide adequate notice that she intended to introduce testimony about Petitioner's mug shot and arrest on the unrelated charge of disorderly conduct. Petitioner contends that the lack of notice violated Michigan Rule of Evidence 404(b)(2) and his fundamental right to due process. The Michigan Court of Appeals determined that this claim was not preserved for appellate review and that Petitioner had not demonstrated "plain error" affecting his substantial rights. *Hayes*, 2014 WL 1267264, at *10.

### 1. Clearly Established Federal Law

"Claims of prosecutorial misconduct are reviewed deferentially" in a habeas corpus proceeding. *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is

the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). The relevant question is whether the prosecutor's conduct infected the trial with such unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The Sixth Circuit recently explained the difficulty of establishing prosecutorial misconduct in the habeas context:

> Because th[e] standard is "a very general one," courts have considerable leeway in resolving such claims on a case-by-case basis. *Parker v. Matthews*, 567 U.S. 37, 48, 132 S. Ct. 2148, 183 L.Ed.2d 32 (2012) (per curiam). That leeway increases in assessing a state court's ruling under AEDPA. [The federal habeas court] "cannot set aside a state court's conclusion on a federal prosecutorial-misconduct claim unless a petitioner cites … other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Trimble [v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)].

*Stewart v. Trierweiler*, 867 F.3d 633, 638-39 (6th Cir. 2017).

## 2. Application

Under Michigan Rule of Evidence 404(b)(2), the prosecution in a criminal case must provide reasonable notice of its intent to introduce evidence of other crimes, wrongs, or acts. The notice must be provided before trial "or during trial if the [trial] court excuses pretrial notice on good cause shown." *Id.*

32

The Michigan Court of Appeals determined on review of Petitioner's claim that Rule 404(b)(2) was not implicated in Petitioner's case because evidence of Petitioner's mug shot and arrest for disorderly conduct was not offered as evidence of other crimes, wrong, or acts. Instead, it was admitted as context for the charged crimes and to explain how the police were able to discover that Petitioner had used a false name at his arrest. The state court's interpretation of state law, and Rule 404(b) in particular, binds this Court sitting in habeas corpus. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). Even if Rule 404(b)(2) applied to Petitioner's case, the alleged violation of the Michigan Rules of Evidence is not a cognizable claim on federal habeas review. *Hall v. Vasbinder*, 563 F.3d 222, 239 (6th Cir. 2009). Moreover, for the reasons discussed in subsection D, the introduction of this evidence did not infect the trial with such unfairness as to make the resulting conviction a denial of due process. *See Darden, supra*.

The Court therefore declines to grant Petitioner relief on this claim.

### G. Whether Petitioner was denied the effective assistance of trial counsel due to counsel's failure to object, request a curative jury instruction, and move for a mistrial

In his seventh and final ground for relief, Petitioner alleges additional claims about his trial attorney. He claims that the attorney's performance was deficient because the attorney failed to: (1) object to testimony about Petitioner's mug shot

and arrest for disorderly conduct; (2) object to the jury instruction on the "intent to kill" element of felony murder; (3) request a cautionary jury instruction regarding Petitioner's criminal history; and (4) move for a mistrial when the prosecutor introduced testimony regarding Petitioner's mug shot and arrest for disorderly conduct. Petitioner maintains that there is a reasonable probability the result of the proceeding would have been different had counsel objected. More specifically, Petitioner argues: (1) if counsel objected to the testimony about his mug shot and arrest for disorderly conduct, the jury would not have been aware of his criminal history; (2) if counsel had objected to the lack of notice on the "intent to kill" element, he could have prepared a different defense; (3) if counsel requested a curative jury instruction, the jury would have had a comprehensive understanding on how to evaluate his criminal history; and (4) if counsel had moved for a mistrial, Petitioner would not have been convicted. The Michigan Court of Appeals determined that trial counsel was not ineffective. *Hayes*, 2014 WL 1267264, at *11.

### 1. Clearly Established Federal Law

The Court previously outlined in subsection B the applicable standard for reviewing ineffective assistance of counsel claims, including the double deference afforded counsel's performance on habeas review.

### 2. Application

For the reasons discussed, Petitioner's underlying claims about his arrest and mug shot and the "intent to kill" element of felony murder lack merit.  Therefore, Petitioner's trial counsel was not ineffective for failing to move for a mistrial, for failing to object to testimony about Petitioner's mug shot and his arrest for disorderly conduct, or for failing to request a cautionary jury instruction regarding Petitioner's criminal history.  Likewise, defense counsel was not ineffective for failing to object to the jury instruction on the "intent to kill" element of felony murder.

An objection or motion for a mistrial related to Petitioner's mug shot and arrest for disorderly conduct would have been meritless, and "[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).  Therefore, the state appellate court's finding that counsel was not ineffective was neither contrary to, nor an unreasonable application of, *Strickland*, and habeas relief is not warranted on Petitioner's claim.

## VI.  CONCLUSION, CERTIFICATE OF APPEALABILITY, AND LEAVE TO APPEAL IN FORMA PAUPERIS

For the reasons given above, this Court concludes that Petitioner is not entitled to habeas relief based on the claims asserted.  Before Petitioner may appeal the Court's decision, he must obtain a certificate of appealability.  *See Miller-El v.*

*Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 327.

Aside from Petitioner's claim related to the introduction of evidence about threats to Tilles, reasonable jurists could not debate the Court's assessment of Petitioner's claims, nor conclude that the issues deserve encouragement to proceed further.  There is no clearly established Supreme Court precedent applicable to the partial closure of Petitioner's trial during Tilles' testimony.  Petitioner fails to show that his counsel's failure to object to the closure prejudiced his defense.  The trial court properly admitted evidence of Petitioner's mug shot and disorderly conduct charge to establish Petitioner's consciousness of guilt and because the evidence was part of the background of the charges against him.  The prosecutor did not violate state law in connection with the introduction of this evidence.  In any event, any violation of Michigan Rule of Evidence 404(b) did not infect Petitioner's trial with such unfairness as to make the resulting conviction a denial of due process.

36

Petitioner was provided notice of the intent to kill element. Finally, Petitioner's ineffective assistance of counsel claim based on the failure to object to the claimed errors lacks merit because the underlying claims lack merit.

With respect to evidence that Tilles was threatened, reasonable jurists could disagree as to whether the introduction of this evidence had a "substantial and injurious effect or influence in determining the jury's verdict." The Court therefore is granting Petitioner a certificate of appealability with respect to his claim that he was denied a fair trial due to the admission of this evidence. For this reason, the Court also finds that an appeal could be taken in good faith and is granting him leave to proceed in forma pauperis on appeal if he appeals this decision.

Accordingly,

**IT IS ORDERED** that Petitioner's application for the writ of habeas corpus (ECF No. 1) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's motion for discovery (ECF No. 9) is **DENIED**.

**IT IS FURTHER ORDERED** that the Court **GRANTS** Petitioner a certificate of appealability with respect to the following issue, only:

Whether Petitioner was deprived a fair trial when the trial court admitted testimony that a key witness, Brian Tilles, was reluctant to testify due to threats.

Petitioner is **DENIED** a certificate of appealability with respect his remaining claims.

**IT IS FURTHER ORDERED** that Petitioner may proceed in forma pauperis on appeal.


Dated:  January 9, 2018                    s/Linda V. Parker_____
                                           U.S. District Court Judge



I hereby certify that a copy of the foregoing document was served upon counsel of record on January 9, 2018, by electronic and/or ordinary mail.

                                           s/Julie Owens_____
                                           Acting in the absence of Richard Loury
                                           Case Manager